**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Shardon Ahpree Gay, | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | Case No. 17 CV 50326 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Correctional Officer Shawbecker, | ) | |
| | ) | |
|     *Defendant*. | ) | |

**REPORT AND RECOMMENDATION**

    It is the Court's Report and Recommendation that Defendant's request for dismissal of the complaint be granted and that Plaintiff's claims be dismissed without prejudice for failure to exhaust administrative remedies. Any objection to this Report and Recommendation must be filed by January 30, 2020. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp*., 882 F.2d 258, 260–61 (7th Cir. 1989).

**I. Background**

    Plaintiff Shardon Ahpree Gay, an inmate currently incarcerated at Danville Correctional Center, filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Winnebago County Jail Correctional Officer Schabacker.[1] Plaintiff alleges that on October 28, 2015, Defendant was deliberately indifferent to his safety when he drove a transport vehicle recklessly, knowing that Plaintiff was handcuffed, shackled, and insufficiently secured. Defendant answered the complaint and asserted as an affirmative defense that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

    Following briefing by the parties on the issue of exhaustion, Judge Sara L. Ellis referred this case to the undersigned to hold an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) to determine whether Plaintiff had administrative remedies available to him and whether he properly used them. This Court held a hearing on December 19, 2019. Both sides were represented by counsel at the hearing. Three witnesses testified: Winnebago County Jail Lieutenant Justin Egler, Winnebago County Jail Correctional Officer Brian Mielke, and Plaintiff.

    At the hearing, it was established that Plaintiff was incarcerated at the Winnebago County Jail from June 18, 2015 until May 11, 2015, when he was transferred to the Boone County Jail. On October 28, 2015, Plaintiff was transported back to the Winnebago County Jail and was incarcerated there until February 6, 2017. The allegations in Plaintiff's complaint relate to his transportation back to Winnebago County Jail on October 28, 2015.

---

[1] Plaintiff misspelled Correctional Officer Schabacker's name in his complaint.

Justin Egler testified that he was a Lieutenant at the Winnebago County Jail ("the Jail") during Plaintiff's incarceration and was familiar with the Jail's grievance procedure. According to Lt. Egler, the Jail had a grievance procedure in place during Plaintiff's incarceration between June 2014 and February 2017, which was set forth in the Inmate Handbook. The Inmate Handbook, which was not provided to inmates in paper form but was available on the inmate kiosks and posted in the housing units, instructed inmates to first attempt to resolve the problem by speaking to a correctional officer. If the problem was not resolved, the inmate should file a grievance using the inmate kiosk. If the problem remains unresolved, the inmate should appeal that decision using the inmate kiosk. The grievance procedure and the kiosk system were the same throughout Plaintiff's incarceration.

Lt. Egler explained that when using the kiosks, an inmate can select from several options to submit grievances or requests. General grievances are reviewed and responded to by the Jail staff. Medical requests are reviewed and responded to by medical staff, and the Jail staff are not authorized to review those requests. Lt. Egler admitted that the Inmate Handbook did not differentiate between general grievances and medical grievances.

Lt. Egler testified that any requests or grievances filed through the kiosks were permanently stored in the Jail's grievance system. Relying on the Jail's Resident Request Report ("Report") for Plaintiff,[2] Lt. Egler testified that Plaintiff did not submit a grievance relating to the alleged reckless driving by a correctional officer during transportation or Defendant Schabacker's conduct. Plaintiff did not dispute this testimony at the hearing.

However, the Report revealed that Plaintiff did file a medical request on November 18, 2015, stating: "Need to see doctor neck and back pain caused in transportaion [sic] here." Defendant's Ex. 16, Dkt. 64-4 at 48. Medical staff responded to Plaintiff's grievance with: "A nurse visit is scheduled." *Id.*

Plaintiff also submitted 16 additional medical requests between November 2015 and November 2016, complaining about his ongoing pain and the lack of medical treatment. Three of those requests referenced his transportation to the Jail but both the request and the response from medical staff focused on Plaintiff's injuries and medical treatment.[3] Between December 2015 and September 2016, Plaintiff submitted similar medical grievances that focused on his ongoing pain and medical treatment with no mention of Defendant Schabacker or any alleged reckless driving. Defendant's Ex. 16 at 45–47, Dkt. 64-4.

---

[2] This Report documented 414 submissions Plaintiff made on the kiosks between June 2014 and October 2017. *See* Defendant's Ex. 16, Dkt. 64-4.

[3] *See, e.g.*, Defendant's Ex. 16 at 48–51, Dkt. 64-4 (3/2/2016 Medical Request: "Since I was transported here and was injured during transport my left side has had mutiple [sic] problems my neck back shoulder area and my knee is in pain."); (5/22/2016 Medical Request: "I have been having some neck and back left shoulder area pains. Also numbness that I get in my left arm and leg. There has also been a problem with my big toe feeling jammed since I was transported here."); (8/18/2016 Medical Request: "Need to see doctor I have an ongoing pain with my left upper back neck area and numbness that goes on periodically in my left leg and arm. There is also sharp pain in my big toe joint area this has been consistant [sic] since my transfer here.").

Plaintiff's Report also revealed that between July 2014 and May 2015, he filed nine grievances. Defendant's Ex. 16 at 31–33, Dkt. 64-4. Following the incident in October 2015, Plaintiff filed 19 grievances. *Id.* at 33–37. However, none of the grievances filed after the incident related to the alleged reckless driving underlying Plaintiff's complaint.

Jail Correctional Officer Brian Mielke also testified at the hearing. During Plaintiff's incarceration at the Jail, Officer Mielke was responsible for inmate classification. When an inmate entered the Jail, he would explain a standard set of procedures to each inmate individually during a classification interview. This included informing each inmate of the Jail's grievance procedure, the need to provide great detail when submitting a request on the kiosk, and where to access the Inmate Handbook. Inmate Handbooks were available on the kiosks, posted on the wall of every housing unit, and a paper copy was available in the classification pod. Officer Mielke also confirmed that each inmate was able to sign into and navigate the kiosk. On June 18, 2014, when Plaintiff was initially incarcerated at the Jail, Officer Mielke conducted Plaintiff's classification interview.

At the hearing, Plaintiff testified that he never received or reviewed a copy of the Inmate Handbook and the Jail officials did not train him how to use the kiosks. Plaintiff also testified that when he was booked for the second time at the Jail on October 28, 2015, he did not receive a classification interview and the Jail staff did not explain the grievance process or otherwise train him to use the kiosks. Plaintiff also testified that Boone County Jail had a grievance procedure that was different from Winnebago County Jail's grievance procedure. However, Plaintiff testified that he taught himself how to use the kiosks by observing other inmates using the kiosks at the Jail. Plaintiff also acknowledged submitting grievances on the kiosks before the October 28, 2015, incident.

In relation to the incident in question, Plaintiff testified that upon arriving at the Jail on October 28, 2015, he explained to the booking officers "what happened on transportation," but admitted he did not go into detail. Plaintiff testified that because of the medical issue, the officers told Plaintiff to talk to the medical staff. Plaintiff explained that because he had a medical issue when he was injured during transportation, he believed it would be dealt with as a medical request or medical grievance. After filing his November 18, 2015 medical request, Plaintiff testified that no one from the Jail followed up with him about his injuries or otherwise investigated.

## II. Legal Standard

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust available administrative remedies before filing a federal lawsuit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Pavey*, 544 F.3d at 740; *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). To exhaust administrative remedies, an inmate must proceed through all steps of the institution's grievance process that are available to him. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). That means the inmate must grieve his complaint "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). The PLRA does not, however, set forth the procedures an inmate must take

to exhaust administrative remedies at a particular institution; rather, the procedures are established by each institution. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). The Seventh Circuit requires strict compliance with the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate "who does not properly take each step within the administrative process has failed to exhaust [administrative] remedies, and thus is foreclosed by § 1997e(a) from litigating." *Pozo*, 286 F.3d at 1024.

Failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216. The burden, therefore, is on the defendant to prove by a preponderance of the evidence that an administrative remedy was available to the plaintiff and that the plaintiff failed to exhaust that remedy. *Jones v. Dart*, No. 14 C 1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016) (collecting cases).

While an inmate at the Winnebago County Jail, Plaintiff was required to follow a three-step grievance process as set forth in the Inmate Handbook. Defendant's Ex. 1, Dkt. 64-1 at 7. Inmates are encouraged first to "resolve problems in an informal manner." *Id.* If the inmate's problem is not adequately resolved, a grievance "with a thorough explanation of the problem" must be submitted using the inmate kiosk. *Id.* If the inmate's problem remains unresolved, he may appeal the grievance decision to the Jail superintendent by using the inmate kiosk. *Id.*

### III. Discussion

Defendant argues that Plaintiff's claims should be dismissed because he failed to exhaust his administrative remedies. Plaintiff does not deny that he did not file a grievance about the October 28, 2015 incident. Instead, Plaintiff argues that his failure to exhaust should be excused because: (1) any attempt to grieve would have been futile; (2) he was unaware of the grievance procedure and was not trained on how to use the kiosk; (3) he was told to speak with medical staff about the incident; and (4) his November 18, 2015 medical request sufficiently notified the Jail staff of the issue.

The Court will quickly dispose of Plaintiff's futility argument. Plaintiff argues that he was not required to grieve because there was no relief the Jail could have provided to undo the injuries that resulted from Defendant's reckless driving. However, there is no futility exception to the PLRA's exhaustion requirement. *Perez*, 182 F.3d at 536 ("No one can *know* whether administrative requests will be futile; the only way to find out is to try.") (emphasis in original). Even if there was nothing the Jail could offer to undo what happened, he was still required to exhaust his administrative remedies. *See Booth v. Churner*, 532 U.S. 731, 740–41 (2001) (requiring exhaustion even if the inmate believes the administrative process will be futile or will not provide the type of relief sought); *Canady v. Davis*, No. 07 C 5028, 2009 WL 1177081, at *3 (N.D. Ill. Apr. 29, 2009) (granting summary judgment where prisoner knew about the grievance procedure and how to initiate a grievance but decided not to file one because he thought it would be useless), *vacated and remanded on other grounds*, 376 F. App'x 625 (7th Cir. 2010). This is a situation where administrative relief, such as disciplinary measures against Defendant, would have been different from what Plaintiff requested, not a situation where the Jail could provide no relief whatsoever. *Compare Booth*, 532 U.S. at 736 (requiring exhaustion where prison could have provided nonmonetary relief even though prisoner sought only money damages) *with White v.*

4

*Bukowski*, 800 F.3d 392, 395–96 (7th Cir. 2015) (excusing exhaustion, in part, because there was no remedy available to correct delayed transportation to the hospital after baby's birth).

Plaintiff's next two arguments seem to assert that the grievance procedure was unavailable to him and therefore he was not required to exhaust his administrative remedies. First, Plaintiff argues that he was unaware of the grievance procedure, namely because he was not provided an Inmate Handbook or a second classification interview, and he was not trained on how to use the kiosk.

The Court points out that it is Defendant's burden to establish that Plaintiff had available administrative remedies that he failed to exhaust. *See Jones*, No. 14 C 1929, 2016 WL 1555588, at *2. Despite Plaintiff's arguments to the contrary, the Court finds that Defendant has met his burden of showing that remedies were available to Plaintiff.

Although Plaintiff did not receive a paper copy of the Inmate Handbook, the evidence at the hearing suggests that he was nevertheless informed of where to locate an Inmate Handbook and that one was available on the kiosks. More importantly, the uncontradicted testimony at the hearing established that the Inmate Handbook was posted in every housing unit. As a result, Plaintiff was made aware of the Jail's grievance procedure. *See Hall v. Sheahan*, No. 2000 C 1649, 2001 WL 111019, at *2 (N.D. Ill. Feb. 2, 2001) (stating that posting the grievance procedure in such a manner that the prisoner could reasonably be expected to see it would suffice to make the grievance procedure available).

Plaintiff also testified that he did not receive any training on how to use the kiosks, despite Officer Mielke's testimony that Plaintiff would have been trained on the kiosk during his initial classification interview. Regardless, Plaintiff testified that he trained himself how to use the kiosks. Furthermore, although Plaintiff testified that he received no training, he did not testify that he was unable to navigate the kiosks or was otherwise denied assistance when requested. *See* Defendant's Ex. 1, Dkt. 64-1 at 7 (Inmate Handbook Grievance Procedures: "Corrections Officer will provide assistance if needed."). Additionally, Plaintiff's Report reflects that Plaintiff submitted numerous requests and grievances on the kiosks both before and after the October 28, 2015 incident. Plaintiff's submissions further support his ability to use the kiosks. *See Schaefer v. Spates*, No. 16 C 50377, 2018 WL 1939331, at *6 (N.D. Ill. Mar. 19, 2018) (finding that the plaintiff's numerous submissions on the jail's kiosk contradicted his testimony that he was unable to use the kiosks), *report and recommendation adopted*, No. 16 C 50377, 2018 WL 1932469 (N.D. Ill. Apr. 24, 2018).

Next, Plaintiff argues that he was not required to exhaust because the booking officers instructed him to speak with the medical staff about the incident. Presumably, Plaintiff is arguing that he was misled about the Jail's grievance procedure and as a result submitted a medical request in lieu of filing a grievance. Administrative remedies may be deemed unavailable "when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1854 (2016); *see also Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) ("[I]f prison officials misled [a prisoner] into thinking that ... he had done all he needed to initiate the grievance process," then "[a]n administrative remedy is not 'available'"). But that is not the situation Plaintiff has described.

5

At the hearing, Plaintiff testified that he explained to the booking officers "what happened on transportation," but admitted he did not go into detail. Plaintiff testified that because of the medical issue, the officers told Plaintiff to talk to the medical staff.

Plaintiff did not testify that he told the booking officers that he was complaining about alleged reckless driving by the officers during his transportation. Rather, Plaintiff's testimony indicated that he focused on the medical issue. Accordingly, it appears the booking officers were likely instructing Plaintiff on how to seek medical treatment. Nothing in Plaintiff's testimony suggests that the booking officers' directions to speak with medical staff excused him from complying with the Jail's grievance procedure. Although Plaintiff was aware of the proper grievance procedure, it appears that he simply failed to follow that procedure. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited."). Therefore, Plaintiff's reliance on the officers' instruction to talk with medical staff, without more, is not enough to make administrative remedies unavailable. *Cf. Swisher v. Porter Cty. Sheriff's Dep't*, 769 F.3d 553, 555 (7th Cir. 2014) ("If you are an inmate and you speak to senior jail officers up to and including the Warden of the jail and are told not to file a grievance because the officers understand your problem and will resolve it without need for you to invoke the formal grievance procedure and they don't tell you how to invoke that procedure, you are entitled to assume that you don't have to file a written grievance.").

Finally, Plaintiff makes the alternative argument that if remedies were available to him, he exhausted those remedies because his medical request put the Jail officials on notice of his claim. The purpose behind the exhaustion requirement is to give the Jail officials notice of Plaintiff's complaint and the opportunity to first address those complaints before a lawsuit is filed. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (finding that an inmate is required to provide enough information to serve a grievance's function of "providing prison officials a fair opportunity to address his complaint.").

Plaintiff's request stated: "Need to see doctor neck and back pain caused in transportaion [sic] here." Defendant's Ex. 16, Dkt. 64-4 at 48. Defendant argues, in part, that the request is insufficient because it fails to allege any improper conduct on the part of the officers that transported Plaintiff.[4] The Court agrees.

A plain reading of Plaintiff's medical request clearly indicates he was seeking medical care for his injuries. *See Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming."). Plaintiff's medical request does not state that he was injured as a result

---

[4] Defendant also argues the request was insufficient because it failed to name Defendant Schabacker. However, Plaintiff was not required to specifically name Defendant. *See Jones*, 549 U.S. at 219 (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation")).

of something the drivers did wrong or otherwise indicate any misconduct that caused his injuries. Plaintiff could have been injured during transportation for reasons unrelated to Defendant's conduct.[5] The plain language of Plaintiff's medical request was too vague to alert the Jail staff that he was complaining about any misconduct by the officers during his transportation. *See Russell v. Mount*, No. 17-CV-570-JPG-SCW, 2018 WL 2422064, at *5 (S.D. Ill. May 4, 2018) (finding a failure to exhaust, in part, because the plaintiff's medical requests "are not grievances but rather are requests for care sent to the healthcare unit. Even still, neither medical request mentions that he is not receiving care or that he requested care from Mount and was ignored."), *report and recommendation adopted sub nom. Russell v. Mooney*, 2018 WL 2412561 (S.D. Ill. May 29, 2018).[6] The medical staff's response to Plaintiff's request confirms this Court's interpretation that Plaintiff was solely requesting medical care. *See* Defendant's Ex. 16 at 48, Dkt. 64-4 (Response: "A nurse visit is scheduled."); *see also See Lovelace v. Yepsen*, No. 13 C 4299, 2016 WL 1660492, at *5 (N.D. Ill. Apr. 26, 2016) (finding that even under the "generous construction" approach under *Strong*, the plaintiff's grievance was insufficient to put the prison on notice of the inadequate medical care, noting that every official who read and considered plaintiff's grievance concluded that he was complaining about his mental health treatment[.]").

Moreover, Plaintiff's medical request is also deficient under the more stringent standard set forth in the Jail's grievance procedure. *See Jones*, 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Here, the Jail's grievance procedure required that grievances contain "a thorough explanation of the problem." Defendant's Ex. 1 at 7, Dkt. 64-1. If Plaintiff's medical request was meant to grieve Defendant Schabacker's conduct, it certainly did not provide "a thorough explanation of the problem." *See Schaefer*, No. 16 C 50377, 2018 WL 1939331, at *5 (N.D. Ill. Mar. 19, 2018) (holding grievance that failed to indicate that the plaintiff was complaining about a correctional officer's failure to respond was insufficient in light of Winnebago County Jail's requirement for a "thorough explanation of the problem").

As a final matter, even if Plaintiff's medical request had provided sufficient notice to the Jail officials, which for the reasons stated above this Court finds it did not, Plaintiff still would not have fully exhausted because he did not follow all the steps of the Jail's grievance procedure. The Jail's procedure outlines a three-step grievance process which begins with an informal complaint. If the inmate deems the resolution to the problem inadequate, he must then file a grievance. *See* Defendant's Ex. 1 at 7, Dkt. 64-1. Lastly, if the problem remains unresolved, the inmate must file an appeal. *Id.* Here, after filing his medical request and receiving a response stating a nurse visit

---

[5] For example, Defendant Schabacker could have slammed on the breaks in response to another driver's actions or the transportation van could have been involved in an accident unrelated to any misconduct by Defendant Schabacker or the other officer.

[6] Defendant also relied on the *Russell* case to argue that Plaintiff's medical request provided insufficient notice because it was reviewed by medical staff instead of the Jail staff. However, the testimony at the hearing was less than clear on whether Plaintiff was instructed on the difference between a general grievance and a medical grievance or request. Furthermore, the Inmate Handbook did not outline the differences so the Court will not hold Plaintiff to a procedure he was unaware of.

is scheduled, Plaintiff never indicated he was unhappy with the response and never filed an appeal.[7] Accordingly, Plaintiff failed to comply with the final step of the Jail's grievance procedure. *See Woodford*, 548 U.S. at 90 (finding that an inmate must grieve his complaint "using all steps that the agency holds out, and doing so *properly*").

Therefore, the Court finds that Plaintiff did not exhaust available administrative remedies. Plaintiff did not file a grievance relating to Defendant's alleged reckless driving or other misconduct that caused his injuries on October 28, 2015. Furthermore, Plaintiff's medical request did not sufficiently notify the Jail officials of the claim underlying his complaint. Accordingly, the Jail's grievance procedure was available to Plaintiff, Plaintiff was aware of this procedure, and Plaintiff did not exhaust his administrative remedies.

### IV. Conclusion

For the reasons stated above, it is this Court's Report and Recommendation that Plaintiff's complaint be dismissed without prejudice for failure to exhaust. *See Fluker v. Cty. of Kankakee*, 741 F.3d 787, 791–92 (7th Cir. 2013) ("We have held that dismissals under § 1997e(a) for failure to exhaust must be without prejudice. This is true even if exhausting administrative remedies will prove to be impossible....").

Date: January 16, 2020        By:        /s/ Lisa A. J_____
                                         Lisa A. Jensen
                                         United States Magistrate Judge

---

[7] The only appeal Plaintiff filed was in July 2016, and it related to a different grievance. Defendant's Ex. 16 at 16, Dkt. 64-4. Although unrelated, Plaintiff's appeal confirms his understanding of how to file an appeal. *See Schaefer*, No. 16 C 50377, 2018 WL 1939331, at *6.